## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DARRELL DUPARD | * | CIVIL ACTION NO.  19-cv-1982 |
| Plaintiff, | * | |
| | * | SECTION " __ " |
| versus | * | |
| | * | JUDGE |
| SHERIFF JOSEPH P. LOPINTO, III, | * | |
| WAYNE AUGILLARD, | * | MAGISTRATE |
| CLERK OF COURT JON A. GEGENHEIMER, | * | |
| UNKNOWN INDIVIDUAL, | * | |
| AND UNKNOWN INSURANCE COS. 1 & 2 | * | JURY DEMANDED |
| Defendants. | * | |

*******************************************************************************

## COMPLAINT

NOW COMES, through undersigned counsel, Plaintiff, Darrell Dupard, who files this complaint for damages, with factual support represented as follows:

## JURIDICTION AND VENUE

1.

The jurisdiction of this Honorable Court is established pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, 42 U.S.C. § 1983, 28 U.S.C. § 2201 *et seq.* (declaratory relief).  The plaintiff alleges violations of applicable federal laws and his constitutional rights under the United States Constitution.

2.

Venue is appropriate pursuant to 28 U.S.C. §1391, since the causes of action, the underlying acts, and the conduct alleged to have caused the injuries occurred and/or arose in this district, specifically Jefferson Parish, and all parties are domiciled in and/or conduct their affairs in, and/or are residents of this district, specifically Jefferson Parish.

3.

This Court has supplemental and pendent jurisdiction over the Louisiana state law claims, pursuant to 28 U.S.C. § 1367, including but not limited to Louisiana Civil Code article 2315 and the Louisiana Constitution.

## **PARTIES**

4.

Made defendants herein are:

a) WAYNE AUGILLARD, a person of the full age of majority and upon information and belief domiciled in the Parish of Jefferson, State of Louisiana, who at all times pertinent hereto was a POST certified sheriff's deputy law enforcement officer appointed and employed by the Jefferson Parish Sheriff's Office and Sheriff Joseph P. Lopinto, III. He is sued in both his individual capacity and in his official capacity.

b) SHERIFF JOSEPH P. LOPINTO, III, a person of the full age of majority and domiciled in the Parish of Jefferson, State of Louisiana, who at all times pertinent hereto was and is the elected sheriff of Jefferson Parish and the chief law enforcement officer of the Jefferson Parish Sheriff's Department. Upon information and belief, Sheriff Lopinto is, and at all relevant times was, a policy-making official of the Jefferson Parish Sheriff's Department. At all relevant times, Sheriff Lopinto is the individual charged with the duty and granted the authority to render final decisions regarding search and seizure policies and practices, use of force policies and practices, including without limitation the protocol, procedures and policies used in the search of, detention and arrest of criminal suspects and the seizure of property. He is sued in both his individual capacity and in his official capacity.

c) CLERK OF COURT JON A. GEGENHEIMER, a person of the full age of majority and domiciled in the Parish of Jefferson, State of Louisiana, who at all times pertinent hereto was and is the elected clerk of court of Jefferson Parish and is the chief officer of the Jefferson Parish

Clerk of Court office.  Upon information and belief, Clerk of Court Gegenheimer is, and at all relevant times was, a policy-making official with the Clerk of Court's office.  At all relevant times, Clerk of Court Gegenheimer is the individual charged with the duty and granted the authority to render final decisions regarding the retention of documents determined to be records of the Twenty-Fourth Judicial District Court and charged with the duty and authority to create policies and practices, including without limitation the protocol, procedures and policies used in retaining documents submitted to the court.  He is sued in both his individual capacity and in his official capacity.

d)   UNKNOWN INDIVIDUAL, that is or may be a person of the full age of majority and upon information and belief domiciled in the Parish of Jefferson, State of Louisiana, who at all times pertinent hereto was a POST certified sheriff's deputy law enforcement officer appointed and employed by the Jefferson Parish Sheriff's Department and Sheriff Lopinto. And, may, at all relevant times was, a policy-making official of the Jefferson Parish Sheriff's Department and an individual charged with the duty and granted the authority to render decisions regarding use-of-force policies and practices, including without limitation the protocol, procedures and policies used in the detention and arrest of criminal suspects.  The Unknown Individual is sued in both individual capacity and official capacity.

e)   UNKNOWN INSURANCE COMPANY 1, an insurance company doing business in the State of Louisiana, and providing insurance to Sheriff Joseph Lopinto, and the Jefferson Parish Sheriff's Department and its appointed deputies, for which the subject-matter incidents described within this Complaint are or may be covered incidents and insured incidents.

f)   UNKNOWN INSURANCE COMPANY 2, an insurance company doing business in the State of Louisiana, and providing insurance to and/or providing insurance to Clerk of Court Jon Gegenheimer and its appointed clerks, for which the subject-matter incidents described within this Complaint are or may be covered incidents and insured incidents.

3

5.

Made plaintiff herein is DARRELL DUPARD a person of the full age of majority and domiciled in the Parish of Jefferson, State of Louisiana.

## STATEMENT OF FACTS

### Facts of Crime Committed by an Unknown Individual

6.

On or about March 9, 2018, Earl Smith was visiting his lifelong friend, plaintiff Darrell Dupard, at Mr. Dupard's home for a barbeque that Mr. Dupard was hosting.

7.

Mr. Smith drove his personal car to Mr. Dupard's house and parked in Mr. Dupard's driveway, leaving his car's windows "cracked open."

8.

During the visit it began raining and Mr. Smith and Mr. Dupard went to Mr. Smith's car to put his windows up.

9.

Mr. Smith's car window would not close, and instead of going up got jammed down lower.

10.

Mr. Smith and Mr. Dupard attempted to close the window with Mr. Smith pushing and prying primarily from the interior of the vehicle and Mr. Dupard doing the same primarily from outside the vehicle.

11.

While working to try to get the window up Mr. Smith noticed his Glock model 20 handgun was missing from inside his vehicle.

12.

The gun was located in the door pocket of the driver's door the window was broken on.

13.

Mr. Smith's window was broken presumably by the thief of the handgun.

14.

Mr. Smith called the Jefferson Parish Sheriff's Department to report his missing gun.

15.

Mr. Smith and Mr. Dupard waited at the home for the Sheriff's officer to show and complete a report on the missing gun.

16.

Jefferson Parish Sheriff's Department's crime scene investigation unit conducted a review of the vehicle and, among other things, lifted finger prints from the vehicle.

17.

Mr. Smith and Mr. Dupard informed the investigating sheriff deputy and the crime scene deputy that their finger prints were on the windows and door from trying to get the window up before they realized the gun was missing and the theft had occurred.

18.

The investigating sheriff took statements from Mr. Smith and Mr. Dupard about the theft.

19.

The Sheriff's Department made a report of the missing handgun and turned the investigation over, upon information and belief, to Detective Wayne Augillard.

**<u>Detective Augillard's Knowledge of Lack of Probable Cause</u>**

20.

Detective Augillard contacted Mr. Smith one or more occasions to discuss the missing handgun.  In these communications, Mr. Smith assured Detective Augillard that it was not his friend, (and plaintiff herein), Mr. Dupard that stole the weapon.

21.

Mr. Smith informed Detective Augillard that his friend, Mr. Dupard, was with him all day and did not go out to the vehicle.

22.

Others at the barbeque could also attest to the facts of Mr. Dupard's whereabouts and his presence in the backyard and house and not visiting Mr. Smith's vehicle.

23.

Detective Augillard suggested he had an incorrect address on the paperwork for Mr. Dupard and requested Mr. Smith provide him the correct address, which Mr. Smith did.

24.

Detective Augillard focused his investigation on Mr. Dupard despite Mr. Smith providing for Mr. Dupard's whereabouts for that day, offering other witnesses that could provide the same, and repeatedly assuring Detective Augillard that Mr. Dupard had nothing to do with the disappearance or theft of his handgun.

25.

Upon information and belief, Detective Augillard improperly continued focus on Mr. Dupard, despite having ample information and evidence available to him that Mr. Dupard was not involved in the disappearance of Mr. Smith's handgun.

26.

Upon information and belief, Detective Augillard focused his investigation on Mr. Dupard solely because Mr. Dupard had a criminal conviction well over 20 years earlier.

27.

Mr. Dupard, at the time of the disappearance of the firearm, had been off parole for 23 years.

**Warrant Issued, Failure to Maintain Public Records**

28.

On or about March 14, 2018, Detective Augillard sought and received a search and seizure warrant from Commission Patricia Joyce of the 24th Judicial District Court in Jefferson Parish, Louisiana.

29.

Under the terms of the warrant, there was an affidavit of Detective Augillard made to the court in order to secure the warrant.  *See attached*, March 14, 2018 Search and Seizure Warrant.

30.

To this date, Mr. Dupard has not seen the affidavit of Detective Augillard.

31.

The 24th Judicial District Court, nor the Jefferson Parish Clerk of Court, maintain records related to the supporting documentation for the issuance of a warrant despite state law requiring the clerk of court to retain such.

32.

Neither the Jefferson Parish Clerk of Court nor the Commissioner of the 24th Judicial District Court retained a copy of the affidavit despite it being submitted as evidence to the Commissioner for the basis of the issuance of a warrant intended to deprive a citizen of their guaranteed freedoms.

33.

Louisiana law requires the clerk of court to maintain this record as part of his ministerial duties.  *See* La. Revised Statute Sec. 13:914l; La. Code of Criminal Procedure article 251.

34.

The Jefferson Parish Clerk of Court, in responding to a public records request for the affidavit, affirmed that the clerk of court does not maintain any recorders related to the warrant or affidavit. *See attached*, Public Records Response, Clerk of Court.

7

35.

The Judicial Administrator for the 24th Judicial District Court, in responding to a public records request for the affidavit, affirmed that the court does not retain any records related to the warrants it issues, or the affidavits used in support. *See attached*, Public Records Response, 24th JDC.

36.

Upon information and belief gathered in the responses to public records requests from the clerk of court and judicial administrator, the only recordkeeper of the affidavit that supported the search warrant that deprived Mr. Dupard of his constitutional rights is Detective Augillard and/or the Jefferson Parish Sheriff's Office.

37.

No Louisiana laws afford the sheriff's office, a detective or the sheriff to be the recordkeeper of the court's record.

38.

By actions and/or inactions of the clerk of court's refusal to maintain this court record in accordance with state law, there is no official record of the court's issuance of the search and seizure warrant issued against Mr. Dupard.

39.

Without an official record, there is no way to demonstrate that Detective Aguillard acted reasonable in his application for the search warrant.

40.

Without an official record, there is no way to prove the court issued the search warrant based on probable cause.

41.

Without an official record, there is no way to prove the court was neutral and detached when issued the search warrant.

42.

Defendants cannot provide court records establishing probable cause, or documentation supporting the issuance of the search warrant.

43.

Without an official record demonstrating a valid and lawful warrant was issued, *ipso facto* Mr. Dupard is a victim of an unlawful search and seizure.

44.

Upon information and inference, Detective Augillard made false, misleading or, known or should have been known, incorrect statements within his warrant application and affidavit to the court in order to secure a search warrant.

45.

If officers have been reasonably trained on applications for warrants, then it is either Detective Augillard intentionally ignored his training and filed a misleading affidavit to the court, or that the Jefferson Parish Sheriff's office has a pattern, practice or procedure allowing its deputies to use any means, including misrepresentations under oath to a court, in order to secure a warrant.

**<u>Unlawful Warrant on its Face</u>**

46.

The warrant calls for a search of Mr. Dupard's residence, as follows (*See attached*, Warrant):

> 3506 Green Acres Road Metairie, LA 70003 and its curtilage is a single family dwelling constructed of white and tan stucco with a gray shingled roof and white trim.  The front door is made of wood with glass panels that face the south.  The municipal numbers 3508 affixed on top of the front entrance door, located within the Parish of Jefferson, State of Louisiana there is now being concealed certain property,
>
> On Glock model 20 10mm pistol with S/N YUP997 or any of its components
>
> Any and all signs of undetected criminal activity
>
> Is/are located, and affidavit submitted in support of this search warrant shows the necessary probable cause for its issuance.  The purpose and reason for this search is to find and seize the item(s) listed above.

9

47.

On its face, Detective Aguillard, as well as any other deputy officer reviewing this warrant prior to execution, should have been able to, and failed to, identify that this warrant was faulty under the U.S. Constitution.

48.

Detective Aguillard sought and received a warrant to search an innocent citizen's residence—knowing he lacked probable cause to search such and providing incorrect or false statements to support or establish probable cause.

49.

Further, Detective Aguillard sought and received a warrant to search for "any and all signs of undetected criminal activity"—thus sought and received a blanket warrant allowing Detective Aguillard and the Jefferson Parish Sheriff's Office unfettered access to Mr. Dupard's residence to search if a law abiding citizen has anything within his house that could be considered criminal activity and lead to a conviction.

50.

Detective Aguillard, through his application and presentation of this warrant, sought to investigate an innocent citizen's residence simply because the citizen had a criminal conviction decades ago.

51.

This warrant is nothing short of a free rein search akin to those of a dictatorship regime.

52.

A reasonable officer, properly trained, should have been able to identify that this warrant was unlawful on its face.

53.

If officers have been reasonably trained on identifying a warrant's unlawfulness, then it is either Detective Aguillard that intentionally ignored the training he received or that the Jefferson Parish

Sheriff's Office has a pattern, practice and procedure to allow its deputies to execute unlawful warrants, or both.

### Unlawful Search of Mr. Dupard's Home

54.

On or about Tuesday, March 20, 2018, at approximately 7:45 am, right as Mr. Dupard's children were leaving for school, Detective Aguillard and other unnamed and unknown deputies arrived at the residence and gained access by entering, without permission, through the unlocked front door.

55.

Deputies did not engage in a "knock and announce" for entering the residence.

56.

Mr. Dupard, asleep in his bedroom, was woke by multiple officers surrounding him in bed—with one officer straddling him and rifles and other firearms pointed at his head.

57.

One false slip or bump of the bed and Mr. Dupard very likely could have been accidently shot or killed.

58.

Mr. Dupard did not resist officers and was attempting to comply with them despite being startled awake by the officers and being placed in tremendous fear with the firearms pointed at him.

59.

Detective Aguillard and the other detectives pulled a completely naked Mr. Dupard from his bed to the ground in a violent manner injuring Mr. Dupard's shoulder in the process.

60.

Mr. Dupard has been diagnosed with injury to his shoulder resulting from this action, likely requiring surgery.

61.

Mr. Dupard sat on the sofa in his living room handcuffed, with shorts on and a t-shirt pulled over his complete upper body, including his arms.

62.

Mr. Dupard was left sitting on his sofa wondering what was going on while Detective Aguillard and other deputies under the supervision and control of Detective Aguillard ripped through and tore apart Mr. Dupard's home searching for "any and all signs of undetected criminal activity."

63.

Rather than conducting an expeditious search, deputies instead sat in Mr. Dupard's massage chair in the living room, figuring out how to work it and enjoying a massage.

64.

Mr. Dupard watched Detective Aguillard and other deputies, under the supervision and control of Detective Aguillard, rip and tear apart his home.

65.

In the process of looking for "any and all signs of undetected criminal activity" the Detective and his deputies destroyed Mr. Dupard's property—breaking multiple beds, emptying numerous files, folders and other paperwork, emptying every piece of clothing from drawers in the middle of the floor, emptying the contents of closets on to the floor and then proceeding to walk on top of the movable property on the ground.

66.

The Dupard family's assets and possessions were trampled upon, ruined, damaged and destroyed by the actions of Detective Aguillard and his deputies.

67.

 Mr. Dupard watched as his wife's wedding dress was ripped from its protective casing in the closet, thrown to the ground, and then trampled on by the deputies.

12

68.

Two firearms were discovered in the house.

69.

These firearms were lawfully owned by Mr. Dupard's brother and legally permitted to be in Mr. Dupard's residence.

70.

It was obvious from visual inspection that neither weapon was a Glock handgun.

71.

Detective Aguillard showed Mr. Dupard these weapons and proceeded to tell Mr. Dupard that "they had him" and he was going to be arrested for being a felon in possession of a firearm.

72.

Mr. Dupard stated it was permissible for him to possess a firearm under his terms of parole and Louisiana law, referring Detective Aguillard to a letter located in a nearby drawer, dated October 13, 1997, (*see* attached, 10/13/97 letter) which states,

> Under the provisions of the Louisiana Constitution, Article 1, Section 20, full rights of citizenship are hereby restored… Your right to bear firearms will automatically be restored ten years from the date you complete this sentence [parole].

73.

Detective Aguillard intentionally and willfully disregarded this letter.

74.

Detective Aguillard proceeded to confiscate and take these two firearms.

75.

It would be months and numerous calls before these firearms were returned to Mr. Dupard and his brother.

## **Warrantless Search of Vehicles**

76.

Detective Aguillard demanded Mr. Dupard provide him with the keys to the two vehicles located outside in front of the property.

77.

The warrant issued to Detective Augillard by the 24th Judicial District Court contains absolutely no authority to search any vehicle and no mention of any vehicle.

78.

It is clear from the face of the warrant that vehicles were not included for the search.

79.

Detective Aguillard requested permission to search the vehicles outside the house and requested the keys to the vehicles.

80.

Mr. Dupard denied Detective Aguillard permission to search the vehicles outside the house.

81.

Detective Aguillard found the keys to the car parked outside and proceeded to have that vehicle searched.

82.

Detective Aguillard told Mr. Dupard if Mr. Dupard did not give up the keys to the pickup truck that they would simply forcibly enter the vehicle.

83.

Shortly thereafter, not having the keys to the pickup truck, Detective Aguillard and the other deputies, forcibly opened the door to the pickup truck, setting off its alarm, and searched the vehicle.

84.

If officers have been reasonably trained on executing a search warrant, then it is either Detective Aguillard that intentionally ignored the training he received or that the Jefferson Parish Sheriff's Office has a pattern, practice, or procedure to allow its deputies to exceed the scope of a search warrant and conduct unlawful searches.

## Other Facts Associated with the Unlawful Warrant and Subsequent Unlawful Search and Seizure

85.

The Glock model 20 was not located on the property or the vehicles—just as Mr. Smith and Mr. Dupard had previously told Detective Aguillard.

86.

It is clear that Detective Aguillard knew Mr. Dupard had a previous criminal record but his actions during the search, and upon belief, the only reason Detective Aguillard sought the search warrant was because of Mr. Dupard's prior criminal record—ignoring all other facts and evidence demonstrating that there was no probable cause to search Mr. Dupard's residence.

87.

An aged criminal record does not equate to probable cause.

88.

During the investigation, Mr. Dupard's wife arrived home and demanded to know what was occurring.

89.

Upon numerous demands, Detective Aguillard went to his patrol unit, got the warrant and provided Mr. Dupard's wife a copy of the warrant.

90.

There was no affidavit attached to the warrant presented to Mr. Dupard's wife.

91.

Mrs. Dupard called a friend who, via telephone, reviewed the warrant's language and informed Mrs. Dupard the warrant appeared unlawful on its face.

92.

At this time, Mrs. Dupard informed Detective Aguillard that she believed the warrant was unlawful.

93.

Shortly thereafter, Detective Aguillard demanded Mrs. Dupard provide her full name and social security number to him so he could conduct a check on her.

94.

Despite being put on notice that the warrant was unlawful, Detective Aguillard did not review the warrant to ensure it was lawful, or, alternatively, Detective Aguillard intentionally ignored a fact he already knew or should have known—that the warrant was unlawful, or alternatively, Detective Aguillard was simply complying with the unwritten policies and procedures of the Jefferson Parish Sheriff's Office that allows for unlawful searches and seizures.

## CLAIMS, CAUSES OF ACTION AND DAMAGES

95.

The acts and conduct of Detective Aguillard and other unknown deputies involved in this action against Mr. Dupard constitute assault and battery, bodily injury, trespass, false arrest/detainment, false imprisonment, malicious prosecution, intentional or negligent destruction or damage to another's property, intentional or negligent bodily injury, intentional or negligent infliction of emotional distress, intentional misrepresentation, falsifying public records and/or prosecutory records, use of excessive force, defamation, slander, libel, and deprivation of rights and freedoms under the laws and constitutions of the United States and/or the State of Louisiana.

96.

Detective Aguillard and other unknown officers, without just and legal cause, violated Mr. Dupard's clearly established rights under the laws and Constitution of the United States.

97.

Plaintiff brings causes of action herein against defendants under 42 U.S.C. §1983, constitutional deprivation claims, as well as state and federal claims, including those of intentional and negligent tortious actions.

98.

Detective Aguillard acted in his personal individual capacity and official capacity under the color law.

99.

Other deputies acted in their personal individual capacity and official capacity under the color of law.

100.

Detective Aguillard and other deputies acted in concert and conspired in order to deprive Mr. Dupard his rights under color of law and as such are liable unto Mr. Dupard.

101.

Detective Aguillard is liable unto Mr. Dupard in his individual capacity because he acted out of malice when he sought the search warrant, executed the search warrant and conducted the unlawful search without probable cause to justify such.

102.

Detective Aguillard used state resources to deprive Mr. Dupard of his rights.

103.

Detective Aguillard is liable in his individual and official capacity when he violated Mr. Dupard's rights by falsely and unlawfully detaining Mr. Dupard.

104.

Detective Aguillard's and other deputies' actions were done and/or taken pursuant to customs, policies and practices, whether written or unwritten, of the Jefferson Parish Sheriff's Office, or they were ratified, condoned, permitted or acquiesced in by those who make policy in the Jefferson Parish Sheriff's Office, including Sheriff Lopinto.  These customs, policies and practices include defendants ignoring civil rights, including without limitation the right to be free from unlawful search and seizure, the right to be free from excessive force and the right to due process and free from unlawful arrest or imprisonment.

### 42 U.S.C. §1983, Constitutional Deprivation Claims under Amendment IV of the U.S. Constitution and Article I of the Louisiana Constitution

105.

Detective Aguillard and other deputies' actions under the supervision of Detective Aguillard deprived Mr. Dupard of his constitutional rights to be secure in his person and house.

106.

Detective Aguillard lacked basis and probable cause for the search warrant application, and/or misled the Commissioner through the presentation of information he knew to be false, misrepresented, absent information for which inclusion would lead to or negate probable cause, or with a reckless disregard for the truth.

107.

Probable cause, at the time of application for the warrant, cannot be demonstrated because the affidavit in support of the warrant was never entered into the record of the court, preserved in proper form, or provided to Mr. Dupard.

108.

Good faith cannot be established under the standards of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).

109.

Neutrality and detachment of the Commissioner for this issuance of the search warrant cannot be established since the affidavit was never entered into the record of the court, preserved in proper form, or provided to Mr. Dupard.

110.

Defendants cannot establish under any standard of review that the search warrant was issued based on probable cause or that Detective Aguillard provided truthful and accurate information to Commissioner.

111.

Mr. Dupard's due process of the law has been deprived by not being provided access to the courts by manner of the lack of a court record as it relates to the issuance of the search warrant.

**Assault, Battery, Excessive Force**

112.

Defendants are jointly, severally and *in solido* liable to plaintiff for the tort of assault, battery and/or excessive force.

113.

Mr. Dupard was complying with the directives of deputies and there was no resistance from Mr. Dupard.

114.

Detective Aguillard and other deputies (at his direction), unprovoked and for unknown and/or improper reasons assaulted, battered and used excessive force in their encounter with Mr. Dupard.

115.

This conduct was unreasonable and resulted in injuries to Mr. Dupard.

116.

Detective Aguillard's and other deputies' actions (and Jefferson Parish Sheriff's Office's lack of, or disregard for custom, policy or procedure against such behavior) deprived Mr. Dupard of his constitutional rights, and exposed him to excessive force, cruel and unusual punishment with great apprehension of imminent death or injury.

117.

As a direct and proximate cause of the above, Mr. Dupard sustained injuries for which he is entitled to the recovery of damages under constitutional provisions of law and state tort law.

**False Arrest, Detainment, Imprisonment**

118.

The facts set forth above support the assertion that Detective Aguillard and other deputies under his control committed a false arrest, detainment, or imprisonment acting under the color of law.

119.

Detective Aguillard and other deputies under his control restrained by handcuffs Mr. Dupard during the course of their unlawful search, restricting his freedoms for unjustifiable reasons.

120.

Detective Aguillard and/or other deputies under his control, restrained Mr. Dupard, for personal reasons unknown to plaintiff, whether they be based on bigotry, hatred, aporophobia, scelerophobia, or other reason, but not based on probable cause.

121.

Mr. Dupard has the right, guaranteed by the United States and Louisiana Constitutions, to be free from unreasonable seizures and the right not to be deprived of his liberty without due process of the law.  Defendants committed a false restraint, acting under the color of law.

122.

As a direct and proximate cause of the above, Mr. Dupard sustained injuries for which he is entitled to the recovery of damages.

**Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress**

123.

"The basis for intentional infliction of emotional distress ("IIED") in Louisiana is the Civil Code article 2315 (citations omitted). The essential elements of the claim are: ***(1) intent to cause, (2) severe emotional distress by, (3) extreme and outrageous conduct*** (citations omitted)." *James v. Woods*, 21 F.Supp. 3d 644, 649 (E.D. La. 2014) (emphasis added).

124.

According to the facts above, defendants' extreme and outrageous misconduct, disregard for protected rights of Mr. Dupard and other similarly situated, and for having a custom, policy or practice allowing for such behavior or ignoring such behavior is the direct and proximate cause of severe emotional distress to Mr. Dupard.

125.

Detective Aguillard and deputies under his supervision, engaged in extreme and outrageous conduct in entering the home without announcement, drawing weapons on a sleeping Mr. Dupard, dragging a naked Mr. Dupard from his bed, engaging in an unlawful search and seizure, as well as other enumerated facts discussed above.

**Defamation/Libel/Slander**

126.

Defendants incident/arrest reports and affidavit constitute a writing and publication.

127.

Defendants intentionally and knowingly made false statements within such reports with the intentions to cause damage to plaintiff.

128.

As a direct and proximate cause of the above, Mr. Dupard sustained injuries for which he is entitled to the recovery of damages.

**Trespass**

129.

Defendants conducted a search of Mr. Dupard's property, including entrance into his house, on an unlawful search warrant, thus Defendants had no proper authority to enter Mr. Dupard's house.

130.

Defendants had no authority to enter into Mr. Dupard's vehicles.

131.

Defendants actions during the course of the unlawful search cause damage and destruction to Mr. Dupard's property.

132.

As a direct and proximate cause of the above, Mr. Dupard sustained injuries for which he is entitled to the recovery of damages.

**Negligent/Intentional Misrepresentation, Falsifying Public Records, Court Records or Prosecutory Records**

133.

Defendants had a legal duty to supply correct information in applying for the search warrant.

134.

Defendants, particularly Detective Aguillard, failed to supply correct information, and had complete disregard or concern for the correctness of the information.

135.

Mr. Dupard's rights and freedoms were impacted because of defendants misrepresentation(s), whether intentional or negligent.

**Punitive Damages**

136.

Under 42 U.S.C. § 1983, punitive damages may be awarded if the defendants' conduct was motivated by malice or a reckless or callous indifference to the plaintiff's protected rights.

137.

In the case *sub judice*, defendants acted maliciously, wantonly and with deliberate indifference while seeking and conducting the search of Mr. Dupard's property.

**Claims and Allegations Particular to Sheriff Lopinto**

138.

Defendant Sheriff Joseph Lopinto of, and acting as chief law enforcement officer for, the Jefferson Parish Sheriff's Office, either directly or through his direct descending appointed deputy commanders, acted with deliberate indifference to the constitutional rights of Mr. Dupard and other similarly situated individuals, established, promulgated, implemented, and maintained customs, policies, or practices that were a proximate cause and a moving force in violations of Mr. Dupard's rights under the U.S. Constitution and Louisiana Constitution and with a deliberate indifference to the civil rights of the members of the public, including but not limited to:

1) Failing to adequately train, supervise, and/or discipline law enforcement officers and supervisors with regard to the appropriate and necessary use of force;

2) Failing to adequately train, supervise, and/or discipline law enforcement officers and supervisors of the constitutional limits of their authority and proper police procedures;

3) Failing to adequately train, supervise and/or discipline law enforcement officers and supervisors with regard to the appropriate establishment of probable cause justifying search;

4) Failing to adequately train, supervise and/or discipline law enforcement officers and supervisors with regards to the truthfulness and accuracy of completing affidavits, court

documents, investigative reports, police reports, incident reports and other documentation;

5) Failing to adequately train, supervise and/or discipline law enforcement officers and supervisors on proper police procedure within the boundaries of the Fourth Amendment of the United States Constitution;

6) Failing to adequately train, supervise and/or discipline law enforcement officers and supervisors on proper police tactics and in-the-field procedures and actions to prevent unlawful searches, false arrests, prevent unlawful detention/imprisonment, prevent excessive force being used, fabrication of probable cause, or falsification of reports;

7) Failing to adequately train, supervise and/or discipline law enforcement officers and supervisors on the proper police tactics and in-the-field procedures and actions to avoid using and prevent excessive force against persons who are compliant or have complied with officers;

8) Failing to adequately train, supervise and/or discipline law enforcement officers and supervisors on making false charges against persons who have not committed any crime or public offense;

9) Hiring and/or retaining as law enforcement officers and supervisors certain persons whom the Sheriff's Department knew or should have known, or had actual or constructive notice of using excessive force, falsifying reports/evidence/affidavits, dishonest behavior, engaging in intimidation, and making unlawful or baseless searches or arrests;

10) Condoning and actively encouraging the use of processes that failed to properly monitor, evaluate and determine the use of excessive force;

11) Condoning and actively encouraging the use of processes that failed to properly monitor, evaluate or determine the truthfulness of documents created by deputies;

12) Condoning and actively encouraging the use of processes that failed to properly monitor, evaluate and determine the appropriateness and lawfulness of a search, arrest or detention;

13) Permitting, allowing, condoning, encouraging, or failing to train on the improperness of covering up acts of misconduct and/or acts of violations of rights of individuals, including but not limited to, the abuse of unnecessary or excessive force, unlawful searches, false arrest, false imprisonment, or dishonesty by officers;

14) Rewarding, praising, or ignoring law enforcement officers that display dishonest and/or abusive behavior towards members of the public;

15) Rewarding, praising, participating in, approving, or condoning department-wide "thin blue line" or "code of silence" among fellow officers and within the department thus amounting to allowing or encouraging dishonesty and perjury by officers and employees; and,

16) The above discussed, as well as unknown but believed to be additional, customs, policies and practices known to the Sheriff and Sheriff's Department as highly likely and probable to cause violations of the U.S. Constitution.

### Claims and Allegations Particular to Clerk of Court Jon Gegenheimer

139.

Defendant Clerk of Court Jon Gegenheimer, individually and through his deputy clerks, failed to maintain a public record in violation of Louisiana law.

140.

Clerk of Court Gegenheimer, individually or through his deputy clerks, came into possession of, should have gained possession of, and should have retained the affidavit used by Detective Aguillard to support and receive the search and seizure he used in the above discussed search.

141.

Clerk of Court Gegenheimer is charged with maintaining the records of the Twenty-Fourth Judicial District Court for the State of Louisiana.

142.

Clerk of Court Gegenheimer has failed to use reasonable efforts and reasonable standards in maintaining the records of the court.

143.

The failure, nay refusal, to maintain the affidavits submitted to the court for support of issuing a warrant (*i.e.* a failure to maintain the official records of the Twenty-Fourth Judicial District Court) have been done in a willful, wanton, or intentional act, by its own operation, and caused injury by depriving the public and Mr. Dupard its right to review public records and have access to the courts of this state.

144.

It is a pattern, practice or policy of the Clerk of Court's office to not retain and maintain the affidavit supporting a warrant application, despite the affidavit being presented to the court as an official record and for which the court refers to in most warrants issued.

145.

Clerk of Court Gegenheimer's failure to maintain any and all affidavits for search warrants, including for the warrant that deprived Mr. Dupard of his freedoms, within the records of the clerk's office, despite such being an official record of the Twenty-Fourth Judicial District Court which deprives Mr. Dupard of his abilities to fairly and fully examine the lawfulness of the actions taken against him by Sheriff Lopinto, and deputies under the control of Sheriff Lopinto.

146.

Clerk of Court Gegenheimer's actions of failing to maintain a record, even if such record is sealed, of affidavits related to the issuance of a search warrant allows for a coat of secrecy over searches and

encourages, if not allows, a deprivation of constitutional rights and is a violation of the Louisiana public records law.

147.

Clerk of Court Gegenheimer's actions of failing to maintain a record, even if such record is sealed, of affidavits related to the issuance of a search warrant is a violation of Mr. Dupard's state and federal constitutional rights.

148.

Clerk of Court Gegenheimer's actions, policies, and/or procedures allow for secrecy to surround a fundamental constitutional right and to abrogate Louisiana law.

149.

Clerk of Court Gegenheimer as chief recordkeeper of Jefferson Parish Clerk of Court office and Twenty-Fourth Judicial District Court, either directly or through his direct descending appointed clerks, acted with deliberate indifference to the constitutional rights of Mr. Dupard and other similarly situated individuals, established, promulgated, implemented, and maintained customs, policies, or practices that provide an appearance of conspiracy, conspiracy, or actual deprivation of Mr. Dupard's rights under the U.S. Constitution and Louisiana Constitution and with a deliberate indifference to the civil rights of the members of the public, and are the proximate cause of damages sustained by Mr. Dupard.

150.

Mr. Dupard is entitled under the Louisiana Constitution, article I, section 22, to have access to this record and failure of the clerk to retain an official record of the court has denied Mr. Dupard his due process of law.

151.

Failure to be able to provide this record of the court has caused damage to Mr. Dupard and his reputation.

**Claims and Allegations Particular to**
**Clerk of Court Jon Gegenheimer and Sheriff Joseph Lopinto**

152.

Clerk of Court Gegenheimer and Sheriff Lopinto have created a policy, procedure or practice to frustrate and deprive citizens the rights to review matters of importance to the public, including the appropriateness of warrants issued and searches conducted under such warrants.

153.

Such policy, procedure or practice to keep the review of a warrant for its validity out of the public record and/or causing it so challenging to access that it is essentially removed from the public record is a violation of Louisiana public records law and deprives Mr. Dupard his rights of inspection under the Louisiana public records law and rights under other state and federal laws.

154.

Clerk of Court Gegenheimer and Sheriff Lopinto appear to, may have, or have conspired to deprive citizens the right to redress constitutional violations of improper searches and seizures by deliberately and intentionally complicating, if not hiding or eliminating from the public record, review of affidavits submitted to the court for purposes of receiving a warrant.

155.

A document which can deprive a citizen of their constitutional rights that is maintained by the party that created it, despite it being submitted as evidence in an official court proceeding, allows for an appearance of alteration, or actual alteration, of an unlawful document to a lawful document when the lawfulness of the document is questioned.

156.

Clerk of Court Gegenheimer's failure to maintain the affidavit and Sheriff Lopinto's maintaining of the affidavit create an authenticity and accuracy issue for the affidavit.

157.

This policy, procedure or practice, or lack thereof, or conspiracy to deprive has caused Mr. Dupard harm and damages.

### Per Se and/or Res Ipsa Loquitur

158.

*Res Ipsa Loquitur*, the lack of a court record prohibits review of the probable cause used by the Commissioner to issue the warrant, and therefore makes the search warrant invalid and unlawful.

159.

The lack of a record of the evidence presented to the court for issuance of a search warrant is *per se* a violation of Mr. Dupard's protections and rights to be free from unreasonable searches and seizures since the warrant lacks any support of probable cause, and such cannot be recreated after the fact.

### Damages

160.

As a direct result of the actions discussed above, Mr. Dupard has experienced significant emotional distress, physical injury, and injury to property.

161.

As a direct result of the actions discussed above, Mr. Dupard has experienced loss of enjoyment of life.

162.

Defendants have deprived Mr. Dupard of his rights secured by the fourth and fourteenth amendments of the United States Constitution in violation of 42 U.S.C § 1983 *et. seq*.

163.

Defendants have deprived Mr. Dupard of his rights secured by the first article of the Louisiana Constitution.

164.

The acts and conduct of the defendants constitute violations under the laws of the State of Louisiana, including those created by Louisiana Civil Code article 2315.

165.

Furthermore, defendants are liable to Mr. Dupard for punitive damages due to the malicious and wanton actions of the defendants.

166.

The actions of defendants deprived plaintiff of his rights, privileges and immunities under the United States Constitution, in particular the right to be secure in his person and home, to be free from excessive use of force, unreasonable and unlawful searches, and from his right to due process.

**Jury Demand**

167.

Mr. Dupard hereby requests a jury trial.

**Prayer**

168.

**WHEREFORE,** plaintiff Darrell Dupard, respectfully requests this Honorable Court to render Judgment in favor of him and against defendants, Wayne Augillard, Sheriff Joseph P. Lopinto, III, Clerk of Court Jon A. Gegenheimer, jointly, severally, and *in solido*, for:

1) A declaration that defendants' conduct deprived plaintiff of his rights, privileges, and immunities secured by the United States Constitution and Louisiana Constitution;

2) An injunction prohibiting defendants to engage in the complained of illegal and unlawful acts and misconduct;

3) General, economical, compensatory, punitive damages, and any other damages learned of or determined during the course of the litigation of this complaint;

4) Reasonable attorney's fees, costs and judicial interest from the date of demand; and,

5)  All other relief which this Honorable Court may find appropriate.

> Respectfully submitted,
>
> _____
> BRYCE G. MURRAY, (#28968)
> JENNY A. ABSHIER (#32984)
> **BIG EASY LAW GROUP, LLC**
> 3939 Veterans Memorial Blvd., Suite 215
> Metairie, Louisiana 70002
> Telephone:  (504) 484-9696
> Facsimile:  (866) 596-2555
> Email: Bryce@brycemurray.com
> *Attorneys for Plaintiff*

HOLD SERVICE
WAIVER OF SERVICE TO BE REQUESTED