# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL DUPARD** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 19-1982** |
| **JOSEPH P. LOPINTO, III, et al.** | **SECTION: "G" (1)** |

## ORDER AND REASONS

Pending before this Court is Defendant Jon Gegenheimer's ("Gegenheimer") "Motion to Dismiss."[1] In this litigation, Plaintiff Darrell Dupard ("Plaintiff") alleges that he was subjected to an unlawful search and seizure by deputies of the Jefferson Parish Sheriff's Office.[2] Accordingly, Plaintiff brings this action under 42 U.S.C. § 1983 for alleged constitutional violations and under Louisiana state law for alleged tort violations by Gegenheimer, the Clerk of Court for the 24th Judicial District Court for the Parish of Jefferson, as well as Jefferson Parish Sheriff Joseph P. Lopinto, III ("Lopinto") and Jefferson Parish Sheriff's Deputy Wayne Augillard ("Augillard").[3] In the instant motion, Gegenheimer argues that Plaintiff fails to state a claim upon which relief can be granted and that the Court lacks subject matter jurisdiction over Plaintiff's state law claims.[4] In opposition, Plaintiff contends that Gegenheimer as the Clerk of Court had a statutory duty to

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 1 at 11-13.

[3] *Id*. at 18-21.

[4] Rec. Doc. 6-1 at 1.

1

maintain the affidavit in support of the search warrant.[5] Having considered the motion, the memoranda in support and opposition, and the applicable law, the Court will deny the motion and grant Plaintiff leave to amend the complaint and to file a Rule 7(a)(7) reply.

## I. Background

### A.    Factual Background

Plaintiff alleges that on or about March 20, 2018, Augillard and other deputies arrived at Plaintiff's residence to conduct a search related to a missing gun.[6] Plaintiff alleges that the officers discovered two firearms which were confiscated.[7] Plaintiff also alleges that Augillard and the other deputies forcibly searched two vehicles located in front of the property.[8] Accordingly, Plaintiff brings suit under 42 U.S.C. § 1983, alleging that the search was unconstitutional, and for various tort violations under Louisiana law.[9] Additionally, Plaintiff brings suit against Lopinto, alleging that Lopinto failed to adequately train, supervise and/or discipline law enforcement officers.[10] Lastly, Plaintiff alleges that Gegenheimer, the Clerk of Court, failed to maintain any and all affidavits for search warrants, which Plaintiff alleges is a deprivation of his federal and

---

[5] Rec. Doc. 8.

[6] Rec. Doc. 1 at 11–13.

[7] *Id*. at 13.

[8] *Id*. at 14.

[9] *Id*. at 18–22.

[10] *Id*. at 24.

state constitutional rights and in violation of Louisiana Public Records Law.[11]

## B.   *Procedural Background*

Plaintiff filed a complaint in this Court on March 4, 2019, bringing claims against Lopinto, Augillard, Gegenheimer and other unknown and unnamed defendants under 42 U.S.C. § 1983 for alleged constitutional violations and under Louisiana state law for alleged tort violations.[12] On April 10, 2019, Defendants Lopinto and Augillard filed a motion to dismiss for failure to state a claim.[13] On April 16, 2019, Defendant Gegenheimer filed the instant motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.[14] On April 30, 2019, Plaintiff filed an opposition to both motions to dismiss.[15] On May 1, 2019, with leave of Court, Plaintiff filed an amended complaint to correct a citation error in the original complaint.[16] On May 8, 2019, with leave of Court, Gegenheimer filed a reply brief in further support of the motion to dismiss.[17]

## II. Parties' Arguments

## A.   *Gegenheimer's Arguments in Support of the Motion to Dismiss*

In the instant motion, Gegenheimer argues that the claims against him should be dismissed

---

[11] *Id*. at 25–29.

[12] Rec. Doc. 1.

[13] Rec. Doc. 5-1.

[14] Rec. Doc. 6-1.

[15] Rec. Doc. 8.

[16] Rec. Doc. 9.

[17] Rec. Doc. 13.

because the Court lacks subject matter jurisdiction over Plaintiff's Section 1983 claims against Gegenheimer in his official capacity insofar as the complaint seeks monetary damages.[18]  Further, Gegenheimer argues that Plaintiff's claims do not involve a federal question and should be resolved in state court.[19]  Additionally, Gegenheimer argues that Plaintiff fails to state a claim upon which relief can be granted.[20]  Lastly, Gegenheimer argues that Plaintiff's claims have no basis in law and are conclusory and speculative.[21]

First, Gegenheimer argues that the Court lacks subject matter jurisdiction over Plaintiff's claims seeking monetary damages against Gegenheimer in his official capacity, as such a claim is barred by the Eleventh Amendment.[22]  Additionally, Gegenheimer argues that he is not responsible for the wrongful search allegations in the complaint as the Clerk of Court does not take part in law enforcement functions.[23]

Next, Gegenheimer contends that this Court does not have subject matter jurisdiction over Plaintiff's state law claims regarding Gegenheimer's alleged record-keeping duty.[24]  Gegenheimer argues that Plaintiff's illegal search and seizure claims are not so related to his Louisiana Public

---

[18] Rec. Doc. 6-1 at 1.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 2.

[22] *Id.* at 3–5.

[23] *Id.* at 4.

[24] *Id.*

Records Law claims such that they are part of the same case or controversy; therefore, the Court does not have subject matter jurisdiction over the record-keeping claims.[25] Gegenheimer contends that Plaintiff's claims that Gegenheimer and Lopinto created a policy, procedure, or practice and conspired to deprive citizens the right to redress constitutional violations of improper searches and seizures is baseless and conclusory and should thus be dismissed.[26] Gegenheimer argues that Plaintiff's claim fails to meet the conspiracy elements of 42 U.S.C. § 1985 and therefore, conspiracy cannot be used to link the public records claim to the illegal search and seizure claim.[27] Gegenheimer argues that he cannot be liable *in solido* with Lopinto because Gegenheimer had no role in determining whether or not the search warrant should be issued.[28]

Gegenheimer contends that the issue of whether Gegenheimer had a duty to maintain the search warrant affidavit must be resolved pursuant to state law first.[29] Gegenheimer contends that for Plaintiff to claim that Gegenheimer violated his civil rights by not maintaining the affidavit, Plaintiff must first establish that Gegenheimer had a duty to maintain the affidavit.[30] Gegenheimer argues that Plaintiff has cited no law which states that affidavits prepared by law enforcement officials and presented to the court in support of obtaining search warrants during investigations

---

[25] *Id*. at 5.

[26] *Id*.

[27] *Id*. at 6.

[28] *Id*. at 7.

[29] *Id*. at 6–7.

[30] *Id*. at 8.

are records which must be maintained by clerks of court.[31] Gegenheimer asserts that Louisiana Revised Statute § 13:914 does not provide that clerks of court have a duty to maintain affidavits provided to a judge by law enforcement in support of the issuance of search warrants.[32] Additionally, Gegenheimer contends that Louisiana Code of Civil Procedure article 251 "provides that a clerk of court is the legal custodian of *its* records and is responsible for their safekeeping and preservation."[33] In sum, Gegenheimer argues that Plaintiff's claims regarding an alleged violation of Louisiana Public Records Law should be decided in state court and that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction because they are not related to Plaintiff's claims against Lopinto such that they form part of the same case or controversy.[34]

Next, Gegenheimer argues that Clerks of Court are afforded the defense of absolute judicial immunity under certain circumstances, including for damages arising from acts they are required to perform under court order or at a judge's discretion.[35] Gegenheimer contends that he is entitled to absolute judicial immunity for a minute clerk's failure to perform a judicial function in not accepting the affidavit for filing and that therefore, the claims against the Clerk of Court in his individual capacity should be dismissed.[36] Second, Gegenheimer argues that government officials,

---

[31] *Id.*

[32] *Id.* at 9.

[33] *Id.* at 10.

[34] *Id.* at 15.

[35] *Id.* (citing *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)).

[36] *Id.* at 15–16.

such as clerks of court, performing discretionary functions are entitled to qualified immunity.[37]

Finally, and in the alternative, Gegenheimer contends that the claims against him should be dismissed because Plaintiff's allegations fail to state a claim upon which relief can be granted.[38] Gegenheimer contends that he had no duty to maintain the affidavit of Aguillard and Plaintiff has not cited any law which supports his allegations to the contrary.[39] Gegenheimer argues that he only had a duty to maintain those documents which would become a part of the record of a case in the 24th Judicial District Court.[40] Lastly, Gegenheimer argues that Plaintiff's claims regarding the establishment of procedures and policies are also conclusory and speculative and should therefore be dismissed.[41]

## B.    *Plaintiff's Arguments in Opposition to the Motion to Dismiss*

First, Plaintiff argues that Louisiana law requires a clerk of court to maintain a copy of an application for a search warrant because it is a court record.[42] Plaintiff contends that Louisiana Code of Civil Procedure article 251 requires the clerk of court to maintain records of the court, not just the clerk's records as Gegenheimer suggests.[43] In response to Defendant's argument that

---

[37] *Id*. at 16–17.

[38] *Id*. at 17.

[39] *Id*.

[40] *Id*.

[41] *Id*. at 18.

[42] Rec. Doc. 8 at 1.

[43] *Id*. at 2.

7

certain record keeping provisions do not apply until a case exists, Plaintiff argues that the Louisiana Attorney General stated that "[i]f no file has yet been opened, then it is the duty of the clerk of court to open a file and record the transcript therein."[44] Plaintiff contends that this interpretation of Louisiana law requires the clerk of court to open a file if one is not already opened.[45] Next, Plaintiff argues that Louisiana Revised Statute § 13:914 provides that "[t]he clerk shall record all pleadings, original documents, and judgments either in a bound book, or by means . . . ."[46] Plaintiff contends that the application for a search warrant is an "original document" and was therefore required to be recorded by the clerk of court.[47]

Next, Plaintiff argues that Louisiana law allows for actions against the clerk of court for the clerk's failure to perform his ministerial duties.[48] Plaintiff contends that under Louisiana Revised Statute § 13:750.1(A), the clerk of court is liable for damages or losses caused by his willful, wanton, or intentional failure to properly perform the duties and obligations of the clerk.[49] Plaintiff argues that Louisiana law only excludes liability for improper filing or failing or refusing to file, when the clerk is directed to do so by order of the court, but argues that here, there is no

---

[44] *Id*. (citing Rec. Doc. 8-1).

[45] *Id*. at 3.

[46] *Id*. (citing La. Rev. Stat. § 13:914(A)).

[47] *Id*. at 4.

[48] *Id*.

[49] *Id*. at 5.

court order instructing the clerk of court to not file and maintain a record of the court.[50]

Responding to Gegenheimer's argument that the Court lacks subject matter jurisdiction over the claims against Gegenheimer, Plaintiff contends that the unlawful search claims and record-keeping claims are linked because the ability to conduct potentially unlawful searches comes from the clerk's refusal to retain the records of the court.[51] Plaintiff argues that Lopinto, Augillard and Gegenheimer all maintain that they are not the custodians of the record.[52] Responding to Defendant's argument that Plaintiff has failed to cite any law that requires the clerk of court to record the warrant application, affidavit and warrant, Plaintiff argues that "it is truly defendants that have cited no laws or court orders stating the clerk of court does *not* have the responsibility to maintain these documents."[53] Lastly, Plaintiff contends that delivery of the affidavit to the court is a question of fact and not appropriate for resolution through a motion to dismiss.[54]

## C.    *Gegenheimer's Arguments in Further Support of the Motion to Dismiss*

Gegenheimer argues that "[u]nless a document is generated by the Clerk of Court, if a document is not offered in open court or otherwise provided to the clerk for filing, then it is not a

---

[50] *Id.*

[51] *Id.* at 6–7.

[52] *Id.* at 8.

[53] *Id.* at 8–9 (emphasis original).

[54] *Id.* at 9.

court record maintained by the Clerk of Court."[55] Gegenheimer contends that this interpretation is confirmed by an opinion rendered by the Louisiana Attorney General.[56] Therefore, Gegenheimer argues that it is the duty of the court to file the transcript with the clerk of court; the clerk of court only has the duty to "accept and record" the transcript once it has been filed by the court.[57]

Gegenheimer contends that Plaintiff misrepresents the Attorney General's opinion.[58] Gegenheimer argues that the opinion of the Attorney General only mentions the filing of the search warrant, not the application for the warrant or an affidavit submitted in support of obtaining a warrant, which is at issue here.[59] Gegenheimer argues that, contrary to Plaintiff's reading, Louisiana Revised Statute § 13:914(A) does not demand the recording of a search warrant with an affidavit.[60] Rather, Gegenheimer contends that "[i]t provides for the method by which clerks of court should maintain pleadings, original documents, and judgments."[61] Gegenheimer argues that if the authenticity of the search warrant is at issue, then Plaintiff has a remedy in state court and should seek to obtain the application from either of its probable custodians—the Jefferson Parish

---

[55] Rec. Doc. 13 at 1.

[56] *Id.*

[57] *Id.* at 2.

[58] *Id.* at 3.

[59] *Id.*

[60] *Id.*

[61] *Id.*

Sheriff's Office or the Jefferson Parish District Attorney.[62]

Next, Gegenheimer contends that Plaintiff has failed to prove, and has not provided any law or factual allegations to suggest, that the clerk of court has a ministerial duty to file an application for a search warrant or affidavit used in support of an application for a search warrant if it is not first provided to the clerk of court for filing.[63] Gegenheimer argues that Plaintiff fails to address state law, such as Louisiana Revised Statute § 13:910, which provides for clerks of court to receive pleadings, documents, and exhibits for filing.[64] Gegenheimer contends that Plaintiff's argument that the clerk of court's failure to retain affidavits allows for an unscrupulous sheriff's office to falsify or exaggerate probable cause if the application is nonsensical because it is the court, not the clerk of court, that considers the merits of affidavits and applications for search warrants.[65] Gegenheimer argues that the warrant itself, which Plaintiff has a copy of and a copy of which is filed into this record, is a record as to the establishment of probable cause.[66]

In sum, Gegenheimer contends that Plaintiff "has offered nothing to establish that the Clerk of Court has a duty to seek out and obtain an affidavit used by a law enforcement official in support of obtaining a search warrant from the court and file it into a record either before or after the

---

[62] *Id*. at 4.

[63] *Id*. at 4–5.

[64] *Id*. at 5.

[65] *Id*. at 6.

[66] *Id*. at 6–7.

commissioner has considered it, and has either issued or declined to issue a search warrant."[67]

## III. Legal Standard

### A. *Legal Standard on a Rule 12(b)(1) Motion to Dismiss*

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute."[68] Thus, under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[69] In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on: (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[70] The plaintiff, as the party asserting jurisdiction, has the burden of proving subject matter jurisdiction by a preponderance of the evidence.[71]

### B. *Legal Standard on a Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[72] A motion to dismiss for failure to state

---

[67] *Id*. at 8.

[68] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[69] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1000 (5th Cir. 1998) (internal citation omitted).

[70] *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). *See also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[71] *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (internal citations omitted).

[72] Fed. R. Civ. P. 12(b)(6).

a claim is "viewed with disfavor and is rarely granted."[73] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[74] "Factual allegations must be enough to raise a right to relief above the speculative level."[75] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[76]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[77] Although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[78] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[79] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[80] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a

---

[73] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[75] *Twombly*, 550 U.S. at 555.

[76] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[77] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[78] *Iqbal*, 556 U.S. at 677–78.

[79] *Id.* at 679.

[80] *Id.* at 678.

cause of action.[81] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[82] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[83] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[84]

## IV. Analysis

In the Complaint, Plaintiff alleges that Gegenheimer, the Clerk of Court for the 24th Judicial District Court for the Parish of Jefferson, failed to maintain any and all affidavits for search warrants, which Plaintiff alleges is a deprivation of his state and federal constitutional rights and in violation of Louisiana Public Records Law.[85] In the instant motion, Gegenheimer argues that Plaintiff's claims do not involve a federal question and should be resolved in state court.[86] Additionally, Gegenheimer argues that Plaintiff fails to state a claim upon which relief can be granted.[87] Accordingly, the Court will first address the jurisdictional challenge raised by

---

[81] *Id.*

[82] *Id.*

[83] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[84] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at *2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[85] Rec. Doc. 1 at 25–29.

[86] Rec. Doc. 6-1 at 1.

[87] *Id.*

Gegenheimer.

## A. *Whether the Court has Jurisdiction Over Plaintiff's Claims Against Gegenheimer*

Gegenheimer argues that this Court should not exercise supplemental jurisdiction over Plaintiff's Louisiana Public Records Law claim because that claim is not so related to the illegal search and seizure claims such that they form or are part of the same case or controversy.[88] Plaintiff responds that Gegenheimer's characterization of the complaint—as two separate claims, one for wrongful search and seizure and one for a public records violation—is an inaccurate portrayal.[89] Rather, Plaintiff claims that the Clerk's failure to record the affidavit is what allowed the allegedly unlawful search to occur.[90]

If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over related state law claims if the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[91] This provision has been interpreted to mean that district courts have supplemental jurisdiction over state law claims when these claims arise out of the same set of operative facts as the federal claims.[92]

28 U.S.C. § 1367(c) enumerates the circumstances in which district courts may refuse to

---

[88] *Id.* at 5-6.

[89] Rec. Doc. 8 at 6.

[90] *Id.*

[91] 28 U.S.C. § 1367(a).

[92] *See State Nat'l Ins. Co., Inc. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004).

exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> (1)      the claim raises a novel or complex issue of State law,
>
> (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)      the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[93]

The Court's determination of whether to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity."[94] The Fifth Circuit instructs that "no single factor" in the supplemental jurisdiction analysis is dispositive, and courts are to look to all of the factors under "the specific circumstances of a given case."[95]

In this case, the federal claims against Lopinto and Aguillard, regarding the allegedly unlawful search and seizure, and the state claims, regarding the allegedly unlawful failure to maintain the affidavit in support of the search warrant authorizing the search, are such that Plaintiff

---

[93] 28 U.S.C. § 1367.

[94] *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

[95] *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992).

"would ordinarily be expected to try them all in one judicial proceeding."[96] Furthermore, the Court has supplemental jurisdiction over Plaintiff's Louisiana Public Records Law claim because this claim is sufficiently related to Plaintiff's Section 1983 claim against Gegenheimer. Here, both the federal and state claims on the face of the pleadings concern the same core factual issue: the allegedly unlawful search and seizure which was authorized, in part, by the affidavit Plaintiff claims the clerk of court should have maintained under Louisiana Public Records Law. Therefore, the claims are sufficiently related for purposes of section 1367(a). Accordingly, the Court finds that it has supplemental jurisdiction over the Louisiana Public Records Law claims and will address Gegenheimer's assertion that the claim should be dismissed on the merits because Gegenheimer did not have a duty to maintain the affidavit.

**B.**    ***Whether Plaintiff Has Stated a Claim Against Gegenheimer under Louisiana Public Records Law***

Louisiana law allows for cause of actions against a clerk of court for failure to perform his ministerial duties. Specifically, Louisiana Revised Statute § 13:750(A) provides:

> Unless the law relieves him of such, the clerk of court in his official capacity as clerk of the court, . . . is liable for any damage or loss caused by his failure to properly perform the duties and obligations of the clerk while acting in such capacity or that is caused by the fault of a clerk, his deputies, or the employees of his office arising out of the performance of their duties.

Gegenheimer contends that Plaintiff cannot state a claim against him because he did not have a duty under Louisiana Public Records Law to maintain the affidavit used in support of the

---

[96] *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

search warrant.[97] Gegenheimer argues that Plaintiff has failed to cite any law which shows that affidavits prepared by law enforcement officials and presented to the court in support of search warrant applications are records which must be maintained by the clerk of court.[98] Plaintiff contends that the Louisiana constitution prescribes a duty on clerks to maintain records of the court, and that the affidavit here qualifies as a record of the court.[99] Therefore, the issue is whether the Clerk of Court had a duty, under either Louisiana Public Records Law or the Louisiana constitution, to maintain an affidavit prepared by law enforcement officials and presented to the court in support of obtaining search warrants.

Plaintiff points to Louisiana Revised Statute § 13:914, Louisiana Code of Criminal Procedure article 162.1(B), and Louisiana Code of Civil Procedure article 251 to support his assertion that Gegenheimer had a duty to maintain the search warrant affidavit.[100] Accordingly, the Court will address whether Plaintiff has shown that Gegenheimer had a duty to maintain the search warrant affidavit under those provisions.

### 1. Louisiana Revised Statute § 13:914

Louisiana Revised Statute § 13:914 provides:

A. The clerk shall record all pleadings, original documents, and judgments either in a bound book, or by means of photorecording, photocopying, microfilming, or other photographic method of reproduction, or electronically on non-rewritable

---

[97] Rec. Doc. 6-1 at 8.

[98] *Id.*

[99] Rec Doc. 8 at 3–10.

[100] Rec. Docs. 8, 9.

magnetic, optical, or laser type storage media, including but not limited to CD-ROM. However, if the clerk elects to record by means of microfilming or other photographic method of reproduction, or electronically, he shall have copies of the films, tapes, or disks available for inspection.

B. Upon the application of any party in interest, and upon satisfactory proof, which may be adduced in chambers, that any pleading, original document, or judgment has been lost or destroyed, the judge may order that a certified copy reproduced from the films, tapes, disks, or the bound record be substituted for the original. If any pleading, original document, or judgment is lost or destroyed, a certified copy reproduced from the films, tapes, disks, or the bound record may be received in evidence in any court.

C. The clerk may charge the same fee for recording by photographic or microfilming process or electronically as for recording in bound books.[101]

Gegenheimer contends that Louisiana Revised Statute § 13:914 does not require clerks of court to maintain affidavits provided to a judge by law enforcement in support of the issuance of search warrants; rather, Gegenheimer argues that the statute merely provides the method by which clerks of court are to maintain pleadings and original documents.[102] Plaintiff argues that Louisiana Revised Statute § 13:914 requires the "recording of a search warrant with affidavit" because the application for a search warrant is an "original document" under Section 13:914.[103] In reply, Gegenheimer reiterates that Louisiana Revised Statute § 13:914 does not demand the recording of a search warrant with an affidavit.[104] Gegenheimer further argues that even if an application for a search warrant or an affidavit used in support of obtaining a search warrant are deemed original

---

[101] La. R.S. 13:914.

[102] Rec. Doc. 6-1 at 9.

[103] Rec. Doc. 8 at 3-4.

[104] Rec. Doc. 13 at 3.

documents under Section 13:914, those original documents must still be provided to the clerk of court before the clerk can file them or maintain them in some other fashion.[105]

Plaintiff alleges that the clerk of court has a duty under Louisiana law to maintain a copy of an affidavit used to support an application for a search warrant.[106] Gegenheimer contends that the clerk of court is not the custodian of the affidavit, and that the request for production of the affidavit should be directed to the 24th Judicial District Court judicial administrator or the Jefferson Parish Sheriff.[107] The question of who is the rightful custodian of the affidavit in support of the search warrant is a factual issue that cannot be decided on a Rule 12(b)(6) motion to dismiss. The statute provides in pertinent part that "[t]he clerk shall record all . . . original documents" in some statutorily permissive manner.[108]

Gegenheimer has a duty to record all original documents of the court. Plaintiff alleges that Gegenheimer failed to record the affidavit submitted to the court in support of the search warrant application. Gegenheimer asserts that he cannot be held liable because the affidavit was not provided to him to file or maintain. This is a factual issue that cannot be resolved on a motion to dismiss. Accordingly, the Court finds that Plaintiff has stated a cause of action against Gegenheimer as the Clerk of Court for failing to perform his ministerial duties.

---

[105] Rec. Doc. 13 at 1-2.

[106] Rec. Doc. 1 at 7.

[107] Rec. Doc. 6-1 at 3.

[108] La. R.S. 13:914.

## 2.    Louisiana Code of Criminal Procedure article 162.1(B)

Plaintiff also argues that Louisiana Code of Criminal Procedure article 162.1(B) requires that oral testimony in support of a warrant be transcribed "and fixed in the record."[109] Plaintiff contends that this provision, in conjunction with the opinion of the Louisiana Attorney General, indicates that a warrant, its application and issuance, creates a record required to be recorded by the clerk of court.[110] Gegenheimer argues that the opinion rendered by the Louisiana Attorney General shows that it is the responsibility of the judge to actually file the record with the clerk; the clerk's duty to maintain the record does not begin until the document is appropriately filed with the clerk.[111]

Louisiana Code of Criminal Procedure article 162.1(B) provides for the issuance of a telephonic search warrant via sworn oral testimony, communicated to a judge by telephone, radio or other electronic method of communication.[112] Subsection (B) of that statute states:

> The sworn oral testimony may be communicated to the judge, and the oath may be administered by the judge, by telephone, radio, or such other electronic method of communication deemed appropriate by the judge. If the judge determines that the warrant should issue, he shall order the applicant to affix a facsimile of his signature to the warrant which the applicant has prepared and to note thereon the date and time of the determination. The sworn oral testimony, the contents of the warrant issued, the order to affix the signature facsimile, and the date and time of the determination shall be electronically recorded by the judge, who shall cause the recording to be transcribed and fixed in the record within seven days. The judge

---

[109] Rec. Doc. 8 at 2 (citing La. Code Crim. P. art. 162.1(B)).

[110] *Id.* at 3.

[111] Rec. Doc. 13 at 1-2.

[112] *See* La. Code Crim. P. art. 162.1(B).

shall certify the accuracy of the transcription.[113]

In response to an inquiry from a police officer regarding the use of the word "record" in Louisiana Code of Criminal Procedure article 162.1, the Louisiana Attorney General issued an advisory opinion stating:

> Once a search warrant is executed, it should be filed into the court record and should be retained for use in any future prosecution. It is the opinion of this office that the transcript of the issuance of a search warrant via telephone is also a court record and should be filed with the clerk of court's office pursuant to La.C.C.P. art. 251. It is the duty of the judge to file the transcript within seven days with the clerk of court. It is then the duty of the clerk of court to accept and record such pursuant to La.C.Cr.P. art. 162.1(B). If no file has yet been opened, then it is the duty of the clerk of court to open a file and record the transcript therein.[114]

Gegenheimer argues that while the Louisiana Attorney General states that "the issuance of a search warrant via telephone is also a court record" the important point here is that the record "should be filed with the clerk of court's office pursuant to [Louisiana Code of Civil Procedure article] 251" and that "[i]t is the duty of the judge to file the transcript within seven days with the clerk of court."[115] Gegenheimer contends that the clerk's duty to "accept and record" the transcript does not begin until the transcript is properly filed with the clerk of court.[116] Gegenheimer argues that Plaintiff does not consider the duty of the court to file the transcript by giving it to the clerk.

Here, there is no indication from the complaint that the search warrant was issued due to

---

[113] La. Code Crim. P. art. 162.1 (B).

[114] 1992 La. AG LEXIS 581, La. Atty. Gen. Op. No. 1992-601 at *2.

[115] Rec. Doc. 13 at 2 (citing 1992 La. AG LEXIS 581, La. Atty. Gen. Op. No. 1992-601 at *2).

[116] *Id*. at 2.

"sworn oral testimony" pursuant to Louisiana Code of Criminal Procedure article 162.1(B).[117] Rather, per the terms of the warrant, Detective Augillard submitted an affidavit to secure the warrant.[118] Because there is no indication that the search warrant was issued due to any oral testimony, Louisiana Code of Criminal Procedure article 162.1(B) is not directly relevant to the issue at hand. However, the opinion of the Louisiana Attorney General does support Plaintiff's assertion that "once a search warrant is executed, it should be filed into the court record and should be retained for use in any future prosecution."[119] As discussed above, Plaintiff alleges that Gegenheimer failed to record the affidavit submitted to the court in support of the search warrant application. Therefore, Plaintiff has stated a cause of action against Gegenheimer as the Clerk of Court for failing to perform his ministerial duties.

### 3. Louisiana Code of Civil Procedure article 251

Louisiana Code of Civil Procedure article 251 provides:

A. The clerk of court is the legal custodian of all of its records and is responsible for their safekeeping and preservation. He may issue a copy of any of these records, certified by him under the seal of the court to be a correct copy of the original. Except as otherwise provided by law, he shall permit any person to examine, copy, photograph, or make a memorandum of any of these records at any time during which the clerk's office is required by law to be open. However, notwithstanding the provisions of this Paragraph or R.S. 44:31 et seq., the use, placement, or installation of privately owned copying, reproducing, scanning, or any other such imaging equipment, whether hand-held, portable, fixed, or otherwise, within the offices of the clerk of court is prohibited unless ordered by a court of competent jurisdiction.

---

[117] La. Code Crim. P. art. 162.1 (B).

[118] *See* Rec. Docs. 1 at 7, 1-1.

[119] 1992 La. AG LEXIS 581, La. Atty. Gen. Op. No. 1992-601 at *2.

B. Notwithstanding the provisions of Paragraph A of this Article, a judge issuing a court order may certify a copy of that order for service of process, if the order is issued in an emergency situation and at a time when the clerk of court's office is not open. A determination of when an emergency situation exists shall be made by the judge issuing the order.[120]

Gegenheimer contends that this provision does not require clerks to maintain affidavits in support of search warrants, but provides merely that "a clerk of court is the legal custodian of *its* records and is responsible for their safekeeping and preservation."[121] Plaintiff contends that while Gegenheimer reads "its" in article 251 to refer to the clerk's records, the correct reading of "its" refers to the records of the court.[122] Plaintiff further argues that the Louisiana Attorney General similarly reads "its" as encompassing the records of the district court.[123] Gegenheimer responds by arguing that per Louisiana Revised Statute § 13:910, which provides that one of the duties of a minute clerk is to file all documents and exhibits offered in open court, unless a document is generated by the Clerk of Court, if a document is not offered in open court or otherwise provided to the clerk for filing, then it is not a court record maintained by the Clerk of Court.[124] Gegenheimer contends that the Attorney General only stated that the clerk of court has the duty to accept and record the transcript after it has been filed with the clerk; Gegenheimer argues that it is

---

[120] La. C.C. P. art. 251.

[121] Rec. Doc. 6-1 at 10 (emphasis original).

[122] Rec. Doc. 8 at 3.

[123] *Id*. at 3.

[124] Rec. Doc. 13 at 1.

the duty of the court to file the transcript by giving it to the clerk for filing.[125]

The parties primarily disagree about the meaning of the word "its" in article 251. One treatise on the subject explains: "La. Code Civ. Proc. Ann. art. 251(A) declares that the clerk of court is the legal custodian of all the records *of the court* and charges him with the responsibility for safekeeping and preserving the records. As legal custodian of these public records, the clerk is required to issue a copy of any of the records, certified as a correct copy of the original under the seal of the court."[126] The title of Article 251 reads "Custodian of *court* records . . ."[127] At least two Louisiana appellate courts have found that Article 251 refers to the records of the court, not the records of the clerk.[128] Therefore, the Court finds that the clerk of court is the legal custodian of all of the court's records and is responsible for their safekeeping and preservation.

Gegenheimer argues that he could not have recorded the affidavit because it was not provided to him for recordation. The question of whether the affidavit was provided to Gegenheimer for filing is a factual issue that cannot be decided on a Rule 12(b)(6) motion to dismiss. Accordingly, the Court finds that Plaintiff has stated a cause of action against Gegenheimer as the Clerk of Court pursuant to Louisiana Code of Civil Procedure article 251. The

---

[125] *Id.* at 2.

[126] Judge Steven R. Plotkin & Mary Beth Akin, La. Prac. Civ. Proc. Article 251, Commentary (2019 ed.) (emphasis added).

[127] La. C.C. P. art. 251.

[128] *See, e.g.*, *Keko v. Lobrano*, 497 So.2d 353, 354 (La. App. 4 Cir.), *writ denied*, 497 So.2d 1003 (La. 1986) (emphasis added) (finding that "under C.C.P. art. 251 . . . the Clerk of Court has a ministerial duty to permit inspection and copying of the *court's* records of civil cases"); *State v. Watkins*, 532 So.2d 1182, 1185 (La. App. 1 Cir. 1988) ("a deputy clerk of a district court is the legal custodian of documents filed in that court.").

statute provides in pertinent part that "[t]he clerk of court is the legal custodian of all of its records and is responsible for their safekeeping and preservation."[129] If the affidavit in support of the search warrant was provided to Gegenheimer for filing, he would be responsible for its safekeeping and preservation under Louisiana Code of Civil Procedure article 251. On a Rule 12(b)(6) motion to dismiss "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[130] Here, the Court finds that Plaintiff has stated a legally cognizable claim that is plausible, and therefore survives the motion to dismiss.

## C.      *Whether Plaintiff has Stated a Claim Against Gegenheimer under Section 1983*

To bring a claim under 42 U.S.C. § 1983, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) that the defendant was acting under the color of state law while doing so.[131] Section 1983 reads, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

---

[129] La. C. C. P. art. 251.

[130] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1949).

[131] *See Wilson v. Dallas Cty. Hosp. Dist.*, 715 Fed. App'x. 319, 323 (5th Cir. 2017).

in an action at law, suit in equity, or other proper proceeding for redress . . . .[132]

Plaintiff appears to bring claims under Section 1983 against Gegenheimer for alleged violations of his right to access the court and his right to access the affidavit.[133]

In the motion to dismiss, Gegenheimer contends that: (1) any claim for monetary damages against him in his official capacity is barred by the Eleventh Amendment;[134] (2) he, as the Clerk of Court, is entitled to absolute judicial immunity;[135] and (3) he is entitled to qualified immunity for any claims against him in his individual capacity.[136] Accordingly, the Court addresses each of these issues in turn.

### 1.    Claims for Monetary Damages Against Gegenheimer in his Official Capacity

Gegenheimer argues that this Court lacks subject matter jurisdiction over Plaintiff's claims against Gegenheimer in his official capacity as Clerk of Court, insofar as the complaint seeks monetary damages.[137] Gegenheimer also argues that "[t]he Clerk of Court is immune from suit in his official capacity as well as his individual capacity for monetary damages."[138] In *Hafer v. Melo*,

---

[132] 42 U.S.C. § 1983.

[133] Rec. Doc. 1 at 19 ("Mr. Dupard's due process of the law has been deprived by not being provided access to the courts by manner of the lack of a court record as it relates to the issuance of the search warrant.")

[134] Rec. Doc. 6-1 at 3-4.

[135] *Id*. at 15-16

[136] *Id*. at 16-17.

[137] *Id*. at 3-4.

[138] *Id*. at 15.

the Supreme Court distinguished between personal suits and official-capacity suits. [139] Importantly, "a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment." [140] "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." [141]

The scope of the Eleventh Amendment extends to actions against state agencies or entities that are classified as "arms of the state." [142] However, "[t]he Eleventh Amendment affords no protection to local government entities and employees." [143] In Louisiana, the Clerk of Court for a parish does not function as an arm of the state for purposes of the Eleventh Amendment. [144] "In Louisiana, [] the Clerk of Court is a political official of the local governmental subdivision wherein his office lies, namely, the parish." [145] "Even though political subdivisions such as parishes, counties, and municipalities exist at the behest of their State, the Eleventh Amendment affords them no protection." [146] Here, because Gegenheimer, as Clerk of Court for Jefferson Parish,

---

[139] 502 U.S. 21, 25 (1991).

[140] *Chaney v. Louisiana Work Force Commission*, 560 F. App'x 417, 418 (5th Cir. 2014).

[141] *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).

[142] *Regents of the University of Ca. v. John Doe*, 519 U.S. 425, 429 (1997).

[143] *Porche v. Saint Tammany Parish Sheriff's Office*, 67 F.Supp.2d 631, 633 (E.D. La. 1999).

[144] *Lumar v. St. John the Baptist Parish*, 2002 WL 500477, at *5 (E.D. La. Apr. 2, 2002).

[145] *Id.* (citing *Gegenheimer v. Galan*, 920 F.2d 307, 311 (5th Cir. 1991)). *See also Bulot v. Justice*, 552 So. 2d 1344, 1346 (La. Ct. App. 1989), *writ denied*, 558 So. 2d 1124 (La. 1990) (holding that the Clerk of Court is a separate "local governmental subdivision" under Louisiana law).

[146] *Porche*, 67 F.Supp.2d at 633.

is a parish official as opposed to a state official, he is not entitled to the protection of the Eleventh Amendment.

### 2. Whether Gegenheimer is Entitled to Absolute Judicial Immunity

Gegenheimer argues that under certain circumstances, Clerks of Court are afforded the defense of absolute judicial immunity.[147] Here, Gegenheimer argues that one of the duties of a minute clerk is to file all documents offered in open court.[148] Gegenheimer contends that if the affidavit was submitted to the judge in open court, then the minute clerk's inaction would be at the direction of the court, and therefore entitled to absolute judicial immunity from suit when performing or failing to perform a judicial function.[149] Plaintiff does not respond to Gegenheimer's judicial immunity argument in opposition.

"Despite the broad terms of § 1983," the Supreme Court "has long recognized" that "long-established absolute immunity" doctrines were not abrogated by the statute.[150] For example, it is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions."[151] In determining whether an official is entitled to absolute quasi-judicial immunity, courts must take a "functional approach" looking to "the nature of the function performed, not the identity or title of the actor who performed

---

[147] Rec. Doc. 6-1 at 15.

[148] *Id.* (citing La. R.S. 13:910).

[149] Rec. Doc. 6-1 at 15-16.

[150] *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).

[151] *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

it."[152] The Fifth Circuit has extended the doctrine of judicial immunity to clerks of court.[153] Specifically, clerks of court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages."[154] So while clerks of court "enjoy[ ] only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions,"[155] they enjoy absolute immunity for acts they are specifically required to do under court orders or at a judge's direction.[156]

"Clerks have absolute quasi-judicial immunity . . . when they perform tasks that are an integral part of the judicial process."[157] For example, "[w]hen a clerk of court files or refuses to file a document with the court, he is entitled to immunity, provided the acts complained of are within his professional functions."[158] The rationale behind this immunity is that "the clerk of court acts as the arm of the judge and comes within his absolute immunity," even when they act "in bad

---

[152] *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

[153] *Small v. Dallas Cnty.*, 170 F. App'x 943, 943 (5th Cir. 2006); *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001).

[154] *Tarter v. Hurley*, 646 F.2d 1010, 1013 (5th Cir. Unit A 1981)).

[155] *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001).

[156] *Tarter*, 646 F.2d at 1013; *Clay*, 242 F.3d at 682.

[157] *Evans v. Suter*, 260 Fed. Appx. 726, 727 (5th Cir. 2007) (citing *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1390 (9th Cir. 1987).

[158] *Evans v. Suter*, Civ. Action No. H–07–1557, 2007 WL 1888308, at *3 (S.D. Tex. June 29, 2007), aff'd, 260 F. App'x 726 (5th Cir. 2007); *see also Clay*, 242 F.3d at 682 (finding that a circuit court clerk was absolutely immune for allegedly charging excessive bail, where trial judge had set bail).

faith or with malice."[159] Absolute immunity "help[s] guarantee an independent, disinterested decision-making process" by "prevent[ing] harassment and intimidation that could otherwise result if disgruntled litigants—particularly criminal defendants and inmates . . . could vent their anger by suing" the individuals they see as responsible for an adverse decision.[160] "A judicial directive that cloaks court employees with absolute immunity may be formal and official, such as a court order, or more informal, such as verbal communication from a judge."[161] "Absolute immunity from damages actions applies, only in a narrow range of actions, for clerks of court acting in a nonroutine manner under command of court decrees or under explicit instructions of a judge."[162]

In the Complaint, Plaintiff alleges that Gegenheimer failed to maintain an affidavit that was submitted to the court in support of a search warrant.[163] Plaintiff cites state law requiring a clerk of court to maintain records as part of his ministerial duties.[164] The action about which Plaintiff complains, the decision regarding whether and when to maintain an affidavit in support of a search warrant, is exclusively a function of the clerk's office. Maintaining documents is a ministerial function within the scope of Gegenheimer's duties as clerk of court. There is no

---

[159] *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980).

[160] *Johnson v. Kegans*, 870 F.2d 992, 996-97 (5th Cir. 1989).

[161] *LaFrance v. New Orleans City*, No. CV 16-14439, 2017 WL 1050495, at *4 (E.D. La. Mar. 17, 2017).

[162] *Williams*, 612 F.2d at 985.

[163] Rec. Doc. 1 at 7.

[164] *Id.*

allegation in the Complaint to suggest that Gegenheimer was acting under the explicit instruction of a judge in failing to maintain the affidavit.

Accepting all well-pleaded facts as true, Gegenheimer has not shown as a matter of law that he is entitled to absolute judicial immunity such that dismissal is warranted at this stage. If at a later stage, the record is supplemented with facts demonstrating that a judge instructed Gegenheimer, as Clerk of Court, to discard the affidavit submitted in support of the search warrant, the Court will reconsider the question of Gegenheimer's absolute judicial immunity. A "routine duty of court clerks does not fall within the narrow exception for clerical actions explicitly commanded by a court decree or by the judge's instructions."[165] Gegenheimer's duty to maintain a record is an example of a routine function which does not appear to have been explicitly commanded by a judge. Accordingly, dismissal of the claims against Gegenheimer based on absolute immunity is not warranted at this stage.

### 3.    Whether Gegenheimer is Entitled to Qualified Judicial Immunity

Alternatively, Gegenheimer argues that as Clerk of Court, he is entitled to qualified immunity.[166] Gegenheimer points to *Burnett v. Denman*, where the Fifth Circuit found that "[c]ourt clerks enjoy qualified immunity for those routine duties not explicitly commanded by either court decree or judicial instruction."[167] Gegenheimer argues that because minute clerks

---

[165] *Williams*, 612 F.2d at 985.

[166] Rec. Doc. 6-1 at 16-17.

[167] *Burnett v. Denman*, 368 F. App'x. 603, 604 (5th Cir. 2010).

regularly do not receive applications and affidavits in support of search warrants for filing, the actions of the Clerk of Court here can be considered routine and therefore, Gegenheimer is entitled to qualified immunity.[168] Plaintiff does not specifically respond to Gegenheimer's qualified immunity argument in opposition to the motion to dismiss.[169] However, "Plaintiff suggests the reasons enumerated by Louisiana law allowing actions against the clerk of court are similar reasoning for overcoming defendant Gegenheimer's claims of qualified privilege."[170] Furthermore, Plaintiff argues that "[t]he clerk's actions violate plaintiff's constitutional rights of access to the courts, being secure in his persons and property and protection from unreasonable searches."[171]

As discussed above, clerks of court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages."[172] Specifically, they "enjoy[ ] only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions."[173] A clerk of court performing routine tasks not explicitly commanded

---

[168] Rec. Doc. 6-1 at 16-17.

[169] *See* Rec. Doc. 8.

[170] Rec. Doc. 8 at 4 n.2.

[171] *Id*. at 6.

[172] *Tarter*, 646 F.2d at 1013.

[173] *Clay*, 242 F.3d at 682.

by a judge is only entitled to qualified immunity from suits brought pursuant to Section 1983.[174] For example, in *Burnett v. Denman*, the Fifth Circuit held that a court clerk's action of informing a plaintiff that a judge had dismissed the plaintiff's malpractice suit was a ministerial act, and thus, the clerk was entitled to qualified immunity.[175]

The action about which Plaintiff complains, the decision regarding whether and when to maintain an affidavit in support of a search warrant, is exclusively a function of the clerk's office. Maintaining documents is a ministerial function within the scope of Gegenheimer's duties as clerk of court. Plaintiff's allegation relates to Gegenheimer's performance of a routine task. Under these circumstances, the Clerk of Court may raise the defense of qualified immunity.

To plead a Section 1983 claim, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) that the defendant was acting under the color of state law while doing so.[176] The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[177] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[178] In this manner, "[o]ne of the most salient benefits of qualified immunity is

---

[174] *Id. See also Leroy v. Whyte*, 2008 WL 906296, *3 (E.D. La., April 2, 2008).

[175] *Burnett*, 368 F. App'x. at 604.

[176] *See Wilson*, 715 Fed. App'x. at 323.

[177] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[178] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

protection from pretrial discovery, which is costly, time-consuming, and intrusive."[179] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[180]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[181] First, the Court asks "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[182] Second, the Court considers whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[183] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[184]

Commencing with the second prong of the *Saucier* framework, the Court must determine whether Plaintiff has alleged a violation of a clearly established constitutional right. When deciding whether the right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would

---

[179] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[180] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[181] 533 U.S. 194 (2001).

[182] *Id.* at 201.

[183] *Id.* at 202.

[184] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

understand that what he was doing violated the law.[185] "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar."[186] When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.[187]

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[188] Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[189]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[190] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow

---

[185] *May v. Strain*, 55 F.Supp.3d 885, 897 (E.D. La. 2014) (Brown, J.) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)).

[186] *Id.*

[187] *Id.*

[188] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

[189] *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

[190] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)).

the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[191] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[192]

Plaintiff's individual capacity claims against Gegenheimer are clouded by overly broad allegations and it is therefore difficult to decipher whether Plaintiff has actually plead violations of his rights under federal law.[193] Plaintiff alleges that Gegenheimer's failure to maintain affidavits in support of search warrants "is a violation of [Plaintiff's] state and federal constitutional rights."[194] However, Plaintiff never fully explains which specific federal constitutional rights he believes Gegenheimer violated, instead generally stating only that Gegenheimer violated Plaintiff's constitutional rights.[195] Plaintiff does state that Gegenheimer's failure to maintain the affidavit submitted in support of the search warrant violated Plaintiff's "right to review public

---

[191] *Id.* at 648.

[192] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).

[193] Rec. Doc. 1 at 25-27.

[194] *Id.* at 27.

[195] *See id.* at 26-27 ("Clerk of Court Gegenheimer's actions of failing to maintain a record, even if such record is sealed, of affidavits related to the issuance of a search warrant allows for a coat of secrecy over searches and encourages, if not allows, a deprivation of constitutional rights and is a violation of the Louisiana public records law . . . Clerk of Court Gegenheimer's actions, policies, and/or procedures allow for secrecy to surround a fundamental constitutional right and to abrogate Louisiana law . . . Gegenheimer . . . acted with deliberate indifference to the constitutional rights of" Plaintiff.).

records and have access to the courts of this state."[196] However, Plaintiff later seems to indicate these claims are being asserted pursuant to the Louisiana Constitution.[197] "The § 1983 remedy encompasses violations of rights secured by federal statutory as well as [federal] constitutional law."[198] Construing the Complaint liberally, Plaintiff appears to allege that he has been denied access to the affidavit or access to the court, in general. Accordingly, the Court addresses each of these issues in turn.

There is no clearly established constitutional right to access affidavits in support of search warrants. The United States Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents."[199] Some courts have found search warrant affidavits are judicial records.[200] However, this determination does not answer the ultimate questions of whether the press or the public have a constitutional right to access the documents.[201] While some courts have found there is a qualified First Amendment right of access to search warrant affidavits, others have found no such First Amendment right of access

---

[196] *Id.* at 26.

[197] *Id.* at 27 ("Mr. Dupard is entitled under the Louisiana Constitution, article I, section 22, to have access to this record and failure of the clerk to retain an official record of the court has denied Mr. Dupard his due process of law.").

[198] *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 702 (5th Cir. 2007) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

[199] *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (internal citations omitted).

[200] *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (concluding that "affidavits for search warrants are judicial records"); *PG Publishing Co. v. Commonwealth*, 532 Pa. 1, 614 A.2d 1106 (1992) (search warrants and affidavits are public judicial records "once the warrants have been executed").

[201] *Baltimore Sun Co.*, 886 F.2d at 6.

exists.[202] Still, other courts have extended the common law qualified right of access to search warrants.[203] There is a sharp "distinction between the rights afforded by the [F]irst [A]mendment and those afforded by the common law" in terms of when the right of access can be denied.[204]

Nevertheless, regardless of where the right to access records arises under the First Amendment or common law, this right of access is not absolute—for example, it may be limited in response to a motion to seal.[205] "In the Fifth Circuit, the common law right of access to judicial records has consistently been addressed on a case-by-case basis . . ."[206] The Fifth Circuit specifically adopted a case-by-case approach in the context of pre-indictment warrant materials.[207] Given that district courts in the Fifth Circuit have discretion in determining the scope of the common law qualified right of access to judicial records on a case-by-case basis, as well as the fact that the right to access affidavits in support of search warrants in not absolute, the Court finds

---

[202] *Compare Certain Interested Individuals v. Pulitzer Publishing Co.*, 895 F.2d 460, 462-63 (8th Cir.1990) (finding a qualified First Amendment right of access to documents filed in support of search warrant applications") *with Baltimore Sun Co.*, 886 F.2d at 64–65 (finding there is no First Amendment right of access to a search warrant affidavit but determining that there is a common law right of access); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213–19 (9th Cir.1989) (finding there is no first amendment right of access to search warrant affidavit).

[203] *See, e.g.*, *Baltimore Sun Co.*, 886 F.2d at 65.

[204] *Id*. at 64.

[205] *United States v. Sealed Search Warrants*, 868 F.3d 385, 393–95 (5th Cir. 2017) ("There is a general, common law right to inspect and copy public records and documents, including judicial records and documents, but this right is not absolute.").

[206] *Id*. at 395.

[207] *Id*. at 396 ("[W]e extend the case-by-case approach previously used by this Court for assessing the common law qualified right of access to judicial records to situations involving an individual's request to access pre-indictment warrant materials such as the affidavits in this case. In cases involving a request to unseal affidavits in support of pre-indictment search warrants, district courts should exercise their discretion by balancing the public's right to access judicial documents against interests favoring nondisclosure.").

that Plaintiff has not carried his burden of demonstrating the inapplicability of the qualified immunity defense in regard to his access to affidavit claims.

Additionally, the Court finds that Plaintiff has failed to plead that Gegenheimer's conduct violated Plaintiff's constitutional right of access to the courts. The Supreme Court of the United States has long recognized a substantive right of access to the courts.[208] "The right of access, in its 'most obvious and formal manifestation . . . protects one's physical access' to the courts."[209] The right of access is "a facilitative right . . . designed to ensure that a citizen has the opportunity to exercise his or her legal rights to present a cognizable claim to the appropriate court and, if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief."[210] The access must be "adequate, effective, and meaningful" to pass constitutional muster.[211]

For example, in *Ryland v. Shapiro*, the Fifth Circuit held that a plaintiffs' right of access was violated when state prosecutors intentionally withheld information that would have allowed plaintiffs to file a wrongful death suit prior to the running of the statute of limitations.[212] Even where plaintiffs had full physical access to the courts, the Fifth Circuit held that plaintiffs' right to

---

[208] *Lewis*, 518 U.S. at 347 (citing *Bounds*, 430 U.S. at 821).

[209] *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994) (citing *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989), cert. denied, 496 U.S. 924 (1990)).

[210] *Crowder*, 884 F.2d at 814.

[211] *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983).

[212] *Id*. at 973.

access the courts was violated when state prosecutors suppressed information that disallowed them to timely file suit. In *Foster v. City of Lake Jackson*, the Fifth Circuit clarified that *Ryland* stands for the proposition that the right of access to courts is only violated when government officials effectively prevented plaintiffs from instituting their action.[213] In other words, the right of access is "implicated where the ability to file suit was delayed, or blocked altogether."[214] As long as the plaintiff is able to file suit, the right of access is not abridged.

A claim that an individual has been unconstitutionally deprived of his right of access to the courts requires a showing of actual injury.[215] A plaintiff "must be able to show that [he has] suffered some cognizable legal prejudice or detriment as a result of the defendant's actions."[216] Because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court . . . the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."[217]

Access-to-court claims are categorized as either a forward-looking claim or a backward-

---

[213] *Foster*, 28 F.3d at 430 (finding that an "officially-created impediment to the ability to file an action" implicates the right of access to courts).

[214] *Smart v. Holder*, No. 09–101, 2009 WL 2498213, at *6 (W.D. Tex. Aug.12, 2009) (quoting *Foster*, 28 F.3d at 430).

[215] *Driggers*, 740 F.3d at 337 (citing *Lewis*, 518 U.S. at 351-52).

[216] *Lavergne v. Stutes*, 2019 WL 4619963, *4 (W.D. La., Sep. 10, 2009) (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)).

[217] *Christopher*, 536 U.S. at 415.

looking claim.[218] A plaintiff asserts a forward-looking claim when he alleges "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," while a plaintiff asserts a backward-looking claim when he alleges that an official action has "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief."[219]

Here, Plaintiff has not alleged prejudice or actual injury as a result of Gegenheimer's actions. Plaintiff alleges the Gegenheimer did not maintain the affidavit but does not assert that this decision denied him access to the court. Plaintiff has thus failed to plead that Gegenheimer's conduct violated his constitutional rights, and his claim is therefore barred by Gegenheimer's qualified immunity.

The Court recognizes that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[220] Short of granting a motion to dismiss, a court may grant Plaintiff leave to amend the complaint.[221] Therefore, the Court will grant the Plaintiff leave to amend the Complaint to address the deficiencies noted herein. The Fifth Circuit in *Schultea v. Wood* explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint

---

[218] *Id.* at 413-14.

[219] *Id.* (citations omitted).

[220] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[221] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

under the ordinary pleading standard.[222] Therefore, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on the basis of qualified immunity.[223] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[224] Accordingly, considering this precedent, the Court will deny Gegenheimer's motion to dismiss at this time and grant Plaintiff leave to allege facts "tailored to an answer pleading the defense of qualified immunity."[225]

## V. Conclusion

As discussed above, the Court finds that the federal and state claims on the face of the pleadings concern the same core factual issue and are therefore sufficiently related for purposes of section 1367(a). Accordingly, the Court has supplemental jurisdiction over the Louisiana Public Records Law claims. Additionally, Plaintiff has stated a claim against Gegenheimer under Louisiana Public Records Law. Lastly, Plaintiff has not carried his burden of alleging facts that would overcome the qualified immunity defense as to his claims that he was denied access to the affidavit or access to the court. As Plaintiff has not alleged facts that can overcome a qualified

---

[222] *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

[223] *See Todd v. Hawk*, 66 F.3d 320 (5th Cir. 1995) ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[224] *Schultea*, 47 F.3d at 1433.

[225] *Id.* at 1434.

immunity defense, pursuant to Fifth Circuit precedent, the Court will allow Plaintiff to file a Rule 7(a)(7) reply before dismissing Plaintiff's Section 1983 claims against Gegenheimer on the basis of qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Jon Gegenheimer's "Motion to Dismiss" [226] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a Rule 7(a)(7) reply as to Plaintiff's Section 1983 claims against Gegenheimer in his individual capacity and to amend the complaint within fourteen days of this Order to cure the deficiencies noted, if possible.

**NEW ORLEANS, LOUISIANA**, this <u>30th</u> day of March, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[226] Rec. Doc. 6-1.